580 So.2d 1119 (1991)
Deanna Gayle AARON
v.
NEW ORLEANS RIVERWALK ASSOCIATION, The Rouse Company, and Mike Anderson's Seafood.
No. 90-CA-0164.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 1991.
Bruce G. Whittaker, New Orleans, for plaintiff/appellant.
John F. Young, Jr., Richard G. Duplantier, Jr., Hebert, Mouledoux & Bland, New Orleans, for defendant/appellee.
SCHOTT, C.J., and WARD, ARMSTRONG, BECKER, JJ., and HUFFT, J. Pro Tem.
BECKER, Judge.
Plaintiff appeals the trial court's judgment granting defendant's, Mike *1120 Anderson's Seafood, motion for summary judgment, and dismissing plaintiff's claims against Mike Anderson's Seafood. Plaintiff, Deanna Gayle Aaron, instituted the present suit against Mike Anderson's, New Orleans Riverwalk Associates, and J.B. Rivers, seeking damages for injuries incurred as a result of a rape and sexual assault which occurred while she was in the course and scope of her employment with Mike Anderson's.
On August 30, 1987, plaintiff was employed by Mike Anderson's as manager of the restaurant at the Riverwalk in New Orleans, Louisiana. That evening, after the restaurant closed, plaintiff entered Mike Anderson's storeroom to deposit into the safe the daily receipts. After entering the storeroom, Ms. Aaron was robbed by Booker Diggins and Charles Washington, at which time she was raped by Diggins and sexually assaulted by Washington.
Diggins and Washington had received the keys to the storeroom from Karis Scott and Matthew Thomas, two employees of Mike Anderson's. Scott and Thomas were aware of, and conspired with Diggins and Washington to rob Mike Anderson's. However, neither Scott nor Thomas were aware of any intentions of Diggins and/or Washington to rape and/or sexually assault the plaintiff. Scott and Thomas were not present at the time of the robbery, rape and sexual assault.
Defendant, Mike Anderson's, filed a motion for summary judgment alleging that it was entitled to a summary judgment as a matter of law because plaintiff's sole remedy against Mike Anderson's, her employer, is under the Louisiana Worker's Compensation Act; and that the employees of Mike Anderson's were not responsible for the rape and/or sexual assault on the plaintiff, and thus, Mike Anderson's can not be held responsible for the assault on Aaron.
Plaintiff opposed the Motion for Summary Judgment and filed a Motion to Strike certain documents Mike Anderson's had attached to its motion. In particular, the plaintiff sought to strike from the record an uncertified copy of the criminal trial transcript, and the affidavit of Richard Williams, a vice-president of Mike Anderson's.
After a hearing on the motions, the trial court denied plaintiff's Motion to Strike and granted defendant's, Mike Anderson's, Motion for Summary Judgment. Plaintiff now seeks review of the trial court judgment arguing that the trial court committed error in denying her Motion to Strike and granting defendant's Motion for Summary Judgment.
A motion for Summary Judgment should be granted, if and only if, the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that the mover is entitled to judgment as a matter of law. L.S.A.-C.C.P. article 966; Employers Surplus Line Insurance Company v. City of Baton Rouge, 362 So.2d 561 (La.1978).
In support of its Motion for Summary Judgment, Mike Anderson's attached a copy of a portion of the transcript of the criminal trial of Diggins and Washington. However, the copy of the transcript is not certified, and the pages from the transcript are not entirely consecutive. The defendant apparently had taken certain pages from the criminal transcript to support its motion. Testimony should neither be received nor considered, even with consent of counsel, to decide a motion for summary judgment. Urban Management Corp. v. Burns, 427 So.2d 1310 (La.App. 2nd Cir. 1983); Landau v. Groves, 397 So.2d 866 (La.App. 4th Cir.1981). Thus, we must find that the trial court erred in denying plaintiff's request to strike the criminal trial transcript.
Plaintiff also argues that the affidavit of Richard Williams should have been stricken from the record. She contends that the affidavit was not properly constructed as it does not set out the facts upon which Mr. Williams' personal knowledge is based. Ms. Aaron further contends that Mr. Williams expresses a conclusion of law in the affidavit.
Louisiana Code of Civil Procedure article 967 provides in pertinent part that affidavits "shall be made on personal knowledge, *1121 shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated herein." Mr. Williams, as vice-president of Mike Anderson's, stated in his affidavit that he had personal knowledge of the day to day operations of Mike Anderson's, and was involved in and familiar with the investigation of the incident involving the plaintiff and all events subsequent thereto. The affidavit, thus, does sufficiently provide a basis to determine that Williams had personal knowledge of the incident in question. However, we must acknowledge that Mr. Williams, in his affidavit, does make a conclusion of law in regards to the employment relationship between Karis Scott, Matthew Thomas, and Mike Anderson's.
Accordingly, we must find that the trial court erred in refusing to strike the portion of Mr. Williams' affidavit that provided:
"9. At all material times hereto, when Karis Scott and Matthew Thomas conspired to rob Mike Anderson's Seafood of Riverwalk, Inc., they were not acting within the course and scope of their employment with Mike Anderson's Seafood and were in no way benefitting the interest of Mike Anderson's Seafood of Riverwalk, Inc."
However, the rest of the affidavit was properly admitted and considered by the trial court.
Even with striking the criminal trial transcript and a portion of Mr. Williams' affidavit, it appears that the trial court did not abuse its discretion in granting defendant's Motion for Summary Judgment. In her petition, plaintiff asserts that Mike Anderson's is liable under the doctrine of respondeat superior, based upon the intentional acts of Karis Scott and Matthew Thomas, for the injuries she received as a result of the rape and sexual assault.
The law is clear that for any employer to be held vicariously liable for an intentional tort of a co-employee against a co-employee, the tortfeasor/employee must be acting in the course and scope of his employment. L.S.A.-R.S. 23:1032; Tampke v. Findley Adhesives, Inc., 489 So.2d 299 (La.App. 4th Cir.1986), writ denied, 491 So.2d 24 (La.1986); Cazenave v. Pierce, 568 So.2d 1360 (La.App. 4th Cir.1990). In determining whether an employee was acting in the course and scope of his employment, the employee's conduct must be so "closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest." LeBrane v. Lewis, 292 So.2d 216 (La.1974); Johnson v. Dufrene, 433 So.2d 1109, 1112 (La.App. 4th Cir.1983), writ denied, 441 So.2d 765 (La. 1983).
The Louisiana Supreme Court in LeBrane v. Lewis, supra and Miller v. Keating, 349 So.2d 265 (La.1977), further set out several factors to be considered in determining whether an employee was acting in the course and scope of his employment when he committed an intentional act:
(1) whether the tortious act was primarily employment rooted;
(2) whether the violence was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.
In the case at bar, the acts complained of did occur on the employer's premises but not during the hours of Scott's and Thomas's employment with Mike Anderson's. While Scott and Thomas did give the storeroom keys to Washington and Diggins, neither was present at the time of the actual robbery and assault. Further, the violence which Ms. Aaron suffered was in no way reasonably incidental to Scott's and Thomas's employment duties. Scott and Thomas were not employed as supervisory personnel nor were they placed in a position of authority. They were simply minimum wage level food service personnel whose responsibilities included preparing food, washing dishes and cleaning the premises.
*1122 Scott's and Thomas's actions and motivations were of a purely personal nature. Their intentions to rob Mike Anderson's had no benefit to, and was entirely against the interests of Mike Anderson's. The employee's manual, which defendant attached as an exhibit to its Motion for Summary Judgment, stated that an employee could be subjected to disciplinary action, including termination, if he engaged in "[t]heft of property belonging to the company or another crew member" and/or an "[a]ssualt on a supervisor or fellow crew member."
Thus, we conclude that the trial court did not err in finding that Scott and Thomas were not acting in the course and scope of their employment when they conspired to rob Mike Anderson's, and granting Mike Anderson's Motion for Summary Judgment. Plaintiff's sole remedy against her employer Mike Anderson's Seafood, is under the Louisiana Worker's Compensation Act.
Accordingly for the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
SCHOTT, C.J., concurs with reasons.
ARMSTRONG, J., dissents with reasons.
SCHOTT, Chief Judge, concurring:
In her petition, plaintiff alleges that she was robbed and raped in defendant's storage room while performing her managerial duties at the restaurant. The two perpetrators obtained access to the room through the aid and assistance of two of plaintiff's co-employees who gave them the key to the storage room and told them when to wait for plaintiff. Plaintiff also alleged that prior to the robbery and rape the impending attack was the subject of joking among defendant's employees while at work.
Accepting these allegations as true, it can be said that two torts occurred. The first occurred when plaintiff's co-employees gave the storage room key to the perpetrators and assisted them in planning the robbery, knowing that a rape was going to be committed incidental to the robbery. The second tort was committed by the perpetrators of the crime when they actually injured plaintiff during the commission of the robbery and rape. Thus, the issue to be addressed is whether under the circumstances of this case the employer can be held vicariously liable for injuries which resulted from a co-employee's tortious act, but which were actually inflicted by one other than the co-employee.
Employers are answerable for the damage occasioned by their employees in the exercise of the functions in which they are employed. LSA-C.C. Art. 2330. The phrase "in the exercise of the functions in which they are employed" is equivalent to the phrase "course and scope of employment." Johnson v. Dufrene, 433 So.2d 1109, 1112, (La.App. 4th Cir.1983).
The lead cases interpreting the meaning of the phrase "course and scope of employment" are LeBrane v. Lewis, 292 So.2d 216 (La.1974) and Miller v. Keating, 349 So.2d 265 (La.1977). In Lebrane, Lewis was a supervisor in charge of LeBrane, a kitchen worker. Lewis dismissed LeBrane for the day, but LeBrane refused to leave the premises. Lewis then fired LeBrane and escorted him to the office to issue termination pay. After the handling of the termination pay, as Lewis escorted LeBrane off work premises, the two argued. Once outside, a fight ensued during which Lewis attacked LeBrane with a knife as LeBrane attempted to flee. The court found that the dispute was primarily employment rooted in that it was incidental to the performance of the supervisor's duty of firing the employee and escorting him from the premises. Furthermore, the incident occurred on employment premises and during the hours of employment. Because the tortious conduct was so closely connected in time, place, and causation to Lewis' employment duties, the court held that Lewis' tort was a risk of harm fairly attributable to the employer's business in contrast to conduct motivated by purely personal considerations entirely extraneous to the employer's interests and concluded that it occurred within the course and scope of employment. LeBrane at 218.
*1123 In Miller, supra, the plaintiff sued Kustom Homes, Inc., Keating, its principal stockholder and executive officer, and two carpenters employed by the corporation. The issue was whether the corporation was vicariously liable for the tortious acts of Kustom's employees who planned to kill Miller, a former officer and employee of the corporation, in order to collect life insurance proceeds. The court held that when assessing the conduct of a corporation's chief executive officer, the conduct must be employment rooted, but not necessarily exclusively so, but should be reasonably incidental to the performance of the officer's official duties. The Court found that the conspiracy was related to Miller's former employment with the corporation and was motivated by Keating's desire to improve the corporation's financial picture. The risk of harm faced by Miller was fairly attributable to Keating's employment by Kustom Homes.
Miller extracted from its reasoning in LeBrane this test: (1) whether the tortious act was primarily employment rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. The court held that not all four factors must be met for vicarious liability to be imposed on the employer for the intentional torts of the employee. Miller at 268.
Applying these precepts to the facts of the instant case, it is clear that the tortious act of plaintiff's co-employees, i.e. giving the key to the perpetrators in furtherance of a conspiracy to commit robbery and rape, was not primarily employment rooted and was not reasonably incidental to the performance of the employees' duties. It was in no way connected to the discharge of their duties as kitchen personnel for Mike Anderson's or reasonably incidental to the performance of their employment function of serving and preparing food. The risk of harm faced by plaintiff was not fairly attributable to the duties of plaintiff's co-employees. In light of these circumstances, Mike Anderson's would not be vicariously liable for the employees' tort even if they concocted the plan and delivered the key on the employer's premises and during employment hours. Finally, it is noted that all applicable case law on the issue of vicarious liability for the intentional torts of employees involves instances where the co-employee is the person who inflicts injury upon the victim, whereas in this case the injury was inflicted by third-parties.
For these reasons, the granting of summary judgment by the trial court was correct.
ARMSTRONG, Judge, dissenting.
I respectfully dissent from the majority opinion because I am satisfied that a genuine issue of material fact does exist as to whether Mike Anderson can be held vicariously liable for the rape and assault of the plaintiff in this matter.
Plaintiff's assailants were admitted into Mike Anderson's storage room during business hours by the assistance of Scott and Thomas, employees who routinely had access to the storage room. Plaintiff argues that the conduct of which she complains presented a risk of harm fairly attributable to Mike Anderson's business. The conduct was very closely related in time, place, and causation to the scope of their employment even if there were elements of a purely personal motive extraneous to Mike Anderson's interest. Furthermore, plaintiff cites two cases that held an employer vicariously liable for the torts of its employee despite the fact that the employee's actions were contrary to the interests of his employer. Weysham v. New Orleans Public Service, Inc., 385 So.2d 19 (La.App. 4th Cir.) writ refused 392 So.2d 690 (La. 1980); Turner v. State, 494 So.2d 1292 (La.App. 2d Cir.1986).
LeBrane v. Lewis, 292 So.2d 216 (La. 1974), the Supreme Court case that established the law in this area, has been interpreted broadly. See: Cazenave v. Pierce, 568 So.2d 1360 (La.App. 4th Cir. 1990) writ denied 572 So.2d 68 (La. 1991) and Ermert v. Hartford Ins. Co., 559 So.2d 467 (La. 1990). Plaintiff should be given the opportunity *1124 to present evidence as to whether the factors outlined in LeBrane are present in the instant case.
I would reverse the trial court's summary judgment in this matter and remand for a trial on the merits.